# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ESTATE OF VERA CUMMINGS,**

    **Plaintiff,**

**v.**                                                    **No. 12cv0081 WJ/RHS**

**UNITED STATES, et al.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
### MOUNTAINVIEW'S MOTION FOR SUMMARY JUDGMENT

    **THIS MATTER** comes before the Court upon Defendant Las Cruces Medical Center d/b/a MountainView Regional Medical Center ("MountainView")'s Motion for Summary Judgment, filed June 2, 2014 (**Doc. No. 120** ). Having considered the parties' briefs and the applicable law, the Court finds that MountainView's motion is well-taken and, therefore, is GRANTED.

### Background

    This is a medical malpractice action arising out of the death of Vera Cummings after she was hospitalized at MountainView. On January 28, 2008, Ms. Cummings was brought into the MountainView Emergency Room by her daughter, because Ms. Cummings was extremely disoriented and confused. Dr. Mark Leatherwood, Ms. Cummings' primary physician, admitted her to MountainView. Ms. Cummings had been Dr. Leatherwood's patient at another healthcare facility, the Ben Archer Clinic, for several years, during which time he had observed her increasing confusion. Prior to her admission to MountainView, Ms. Cummings had been living at the Golden Mesa Senior Community, and her daughter, Mary Lee Henderson, was a nurse at

the Las Cruces Good Samaritan Village ("Good Samaritan"), where Ms. Cummings' husband was under skilled nursing care secondary to old age.  At the time of her admission to MountainView, Ms. Cummings did not realize she was in a hospital, did not know the name of her daughter, and wanted to leave MountainView.  Ms. Cummings was ultimately discharged from MountainView and sent to Good Samaritan. Her discharge diagnosis was confusion, hypertension, and wrist fracture.  On February 10, 2008, Ms. Cummings died at Good Samaritan. Dr. Leatherwood certified the cause of death as Alzheimer's, respiratory arrest, and chronic obstructive pulmonary disease.

Plaintiff alleges that Dr. Leatherwood, along with Dr. Raquel Neeley and Dr. Enrique Martinez, other Ben Archer doctors who treated Ms. Cummings, improperly medicated Ms. Cummings during her stay at MountainView and also failed to properly hydrate and feed Ms. Cummings.  Plaintiff alleges that their negligence caused Ms. Cummings' death.  Defendant MountainView seeks summary judgment on Plaintiff's claims against it.

## Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Id.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he or she may not rest on mere allegations or denials in his or her own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at

249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252

**Discussion**[1]

## I.      MountainView is Entitled to Summary Judgment on Plaintiff's Medical Negligence Claim

MountainView argues that it is entitled to summary judgment on Plaintiff's medical negligence claim, because Plaintiff failed to produce an expert report before the deadline for such disclosures.  In response to MountainView's contention regarding the failure to produce an expert report, Plaintiff makes three arguments: 1) Plaintiff should be excused for failing to meet the expert report deadline; 2) under Fed. R. Civ. P. 56(d), Plaintiff is entitled to additional discovery before responding to MountainView's Motion for Summary Judgment; and 3) Plaintiff did disclose an expert report that states MountainView breached the standard of care.  For the reasons set forth further below, all three of these arguments fail.

### A.      Plaintiff is not Entitled to an Extension of the Expert Report Deadline

Discovery in this matter has taken far longer than the usual 180 day discovery period for civil cases in this district due to delay caused by preliminary motions including a motion to remand and a jurisdictional dispute during which Plaintiff was allowed to conduct limited discovery and several extensions of the discovery deadlines.  See **(Doc. No. 72)**, entered January 8, 2013 (granting unopposed motion to extend discovery); **(Doc. No. 112)**, entered March 26, 2014 (extending certain discovery deadlines).  On March 17, 2014, parties submitted a joint motion requesting a four month extension of all discovery deadlines in this case.  See **(Doc. No. 111)**.  United States Magistrate Judge Robert Scott entered an Order denying in part and granting in part the Motion to Extend to Extend Deadlines.  See **(Doc. No. 112)**.  Judge Scott found a four month extension would be "too long and will result in certain case management deadlines

---

[1] Rather than discuss all of the Undisputed Material Facts collectively, the Court will address the relevant facts where appropriate.

backing up too close to the Pretrial Conference (November 14, 2014) and the trial setting (January 26, 2015)." Id.  Accordingly, Judge Scott granted an extension only until May 1, 2014 for the disclosure of expert reports.

Plaintiff states that she calendared the dates that the parties had originally agreed upon and "failed to realize that the Court had not approved the agreed to date."   See **(Doc. No. 124)**, Plaintiff's Response, p. 2.  While the Court accepts Plaintiff's representation that failing to meet the expert report deadline was inadvertent rather than purposeful, the Court simply cannot understand how Plaintiff "failed to realize" that the Court had denied in part the Motion for Extension because the Judge Scott's Order was clearly captioned as such.  See **(Doc. No. 112)**. Further, Judge Scott's Order explicitly stated that May 1, 2014 was the deadline for disclosure of expert reports.  Id.  Plaintiff's failure to acknowledge a Court Order is simply not excusable.

Additionally, Plaintiff's arguments in her Response to the Motion for Summary Judgment were similar to her arguments for an extension of discovery in her Motion for Extension, which was denied by Judge Scott.  If Plaintiff had felt that Judge Scott's decision was erroneous, she should have filed an objection to the Order within the time period set forth in Fed. R. Civ. P. 72. Plaintiff cannot now assert she is entitled to an extension that was already denied by Judge Scott, because she failed to object to his original order denying the extension. Further, after the Motion for Summary Judgment was fully briefed and nearly two months after the expert disclosure deadline, Plaintiff again requested an extension of discovery deadlines, including the disclosure of expert reports.  See **(Doc. No. 134)**.   The Court does not believe that a late request for an extension can cure Plaintiff's original failure to file a timely expert report.  Plaintiff did not even request another extension of the expert report deadline until months after the deadline had passed and after the motion for summary judgment was fully briefed.  With the Motion for Summary Judgment, Plaintiff was again put on notice that she needed an expert report.  Instead of

addressing that issue promptly, she waited another two weeks to request an extension.  The Court will not allow Plaintiff to retroactively change the deadline for her expert report when at the time of the filing of the motion for summary judgment she had not supplied an expert report.

        B.      *Plaintiff is not Entitled to Additional Discovery Under Fed. R. Civ. P. 56(d)*

      In addition to arguing some sort of "excusable neglect" in failing to comply with the expert report deadline, Plaintiff also makes a Fed. R. Civ. P. 56(d) request for additional discovery.  Fed. R. Civ. P. 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     **(1)** defer considering the motion or deny it;
>     **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>     **(3)** issue any other appropriate order

Fed. R. Civ. P. 56(d).

      "A party seeking to defer a ruling on summary judgment under Rule 56[(d)] must file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts."  Garcia v. U.S. Air Force, 533 F.3d 1170, 1179 (10th Cir. 2008) (internal quotations and citation omitted).  "A party may not invoke Rule 56[(d)] by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion."  Id.

      This Rule 56(d) request is unique, because MountainView is not moving for summary judgment based upon the actual merits of the claims.  Instead, MountainView focuses on the fact that Plaintiff failed to disclose an expert within the deadline.  Plaintiff recognized this nuance and has argued she cannot provide an expert report until additional discovery is completed.  Plaintiff requests three categories of evidence: 1) Rule 30(b)(6) depositions of witnesses that will testify generally regarding the nursing care provided to Ms. Cummings; 2) depositions of any

pharmacologists employed by MountainView; and 3) depositions of witnesses with knowledge regarding the contracts between the Ben Archer physicians and MountainView.

Plaintiff's Rule 56(d) affidavit is insufficient for a number of reasons.  Plaintiff's 56(d) affidavit fails to demonstrate her request for additional discovery with the requisite specificity. Plaintiff does not explain with any amount of detail how the fact that certain discovery has not been conducted prevented her from obtaining an expert in this matter.  Plaintiff only generally alleges that "Defendant's Motion cannot be fully addressed given the stage of discovery[,]" **(Doc. No. 124)**; she does not specify "how the additional material will rebut the summary judgment motion."  See Garcia, 533 F.3d at 1179.  Given that Plaintiff alleges that Ms. Cummings was improperly medicated, the Court does not understand why an expert could not have reviewed the medical records in this case to form an opinion.  Plaintiff does not argue that she has an expert who simply needs the additional discovery to render his or her full opinion, instead she appears to assert that she could not even attempt to obtain an expert after nearly two years of discovery.

Plaintiff further argues that Defendants have failed to cooperate in discovery, thus a number of previously scheduled depositions were not completed by the discovery deadline. MountainView asserts that the delays were caused by Plaintiff.  The Court need not resolve the issue of who is responsible for the delays, because regardless of who is at fault, Plaintiff has failed to demonstrate how the additional discovery would aid in her responding to the motion for summary judgment.[2]   Plaintiff also argues that because parties agreed to extend discovery

---

[2] Nonetheless, the Court notes that Plaintiff's "proof" of Defendant's failure to accommodate her discovery requests does not show any lack of cooperation on the part of MountainView.  In fact, the e-mail string attached as Exhibit 4 to Plaintiff's Response demonstrates that Plaintiff did not tell defense counsel which witnesses she wanted to depose and further shows that Plaintiff set a Rule 30(b)(6) deposition without any prior discussion with opposing counsel on the topic.  See **(Doc. No. 124)**, Exhibit 4.  Understandably, defense counsel was surprised when Plaintiff threatened to move forward with unilaterally setting depositions when Plaintiff had not yet identified the individuals she wanted to depose or the topics she wished the Rule 30(b)(6) deponent to discuss.

deadline, it was clear that more discovery was needed.  This type of conclusory reasoning does not meet her burden of demonstrating *why* more discovery is needed.

Furthermore, Rule 56(f) is not intended to be a vehicle to rescue parties who miss discovery deadlines.  See Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1151 (10th Cir.2006).  (Rule 56(d) "does not compel the court to grant a continuance to a party that has been dilatory in conducting discovery.").  This case was filed in early 2012.  Discovery in this matter has lasted over two years.  Plaintiff has had ample opportunity to conduct discovery regarding MountainView's alleged negligence including securing an expert opinion regarding MountainView's treatment of Ms. Cummings.  Plaintiff's belated attempts to seek an extension of discovery cannot salvage her case.  The Court holds that Plaintiff is not entitled to additional discovery under Fed. R. Civ. P. 56(d).

   C.   *Dr. Schneider's Report does not Support a Medical Negligence Claim Against MountainView*

Finally, Plaintiff asserts that she did provide an expert report to Defendants prior to the expert report deadline, that of Dr. Edward Schneider.  However, as MountainView correctly observes, this report does not address any conduct on the part of MountainView but only offers an opinion as to the conduct of Doctors Leatherwood, Neeley, and Martinez.[3]  See (**Doc. No. 124**), Exhibit 1, Report of Dr. Edward Schneider.  The Court has already ruled that these doctors were not employees of MountainView, but rather were acting as employees of the Ben Archer Health Center, a federal medical facility.  (**Doc. No. 83**), p. 8 ("However, as the On-Call Agreements plainly state that the Physicians were not employees of [Mountain View], they do not negate the Physicians' status as federal employees.").  Having held the physicians were federal employees, the Court went on to state that the Federal Tort Claims Act was the exclusive

---

[3]  MountainView also asserts that Dr. Schneider's report fails to meet the applicable evidentiary and procedural standards for admissibility.  However, because the Court finds that even if Dr. Schneider's report was proper, it would not establish negligence on the part of MountainView, the Court need not resolve this issue.

remedy for the actions of these doctors.   See id.   In fact, United States of America was substituted as a defendant place of the three physicians.   See **(Doc. No 4)**, Notice of Substitution. Accordingly, Plaintiff cannot rely on the actions of the physicians in order to establish negligence on the part of MountainView as the Court has already found that these physicians were not employees of MountainView.   Dr. Schneider's report does not assert that any employees of MountainView were negligent.   Thus, there is not expert testimony supporting Plaintiff's medical negligence claim against MountainView.

>   D.   *Plaintiff's failure to Obtain an Expert Report Regarding MountainView's Actions is Fatal to her Medical Negligence Claim*

Having found that Plaintiff has not produced an expert report to support her medical negligence claim against MountainView and she is not entitled to additional discovery or an extension of the deadline, the Court must next consider whether failure to produce an expert report is fatal to her medical negligence claim.

The testimony of a medical expert is generally required when a physician's standard of care is being challenged in a medical negligence case.   Lopez v. Southwest Cmty. Health Servs., 114 N.M. 2, 7, 833 P.2d 1183, 1188 (Ct.App.1992) (holding that "[i]n a medical malpractice case, because of the technical and specialized subject matter, expert medical testimony is usually required to establish departure from recognized standards in the community"); Folz v. State, 797 P.2d 246, 260 (N.M.1990) ("in many cases expert testimony will be required to establish [medical] causation.").   This general rule is in place because "the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion."   Woods v. Brumlop, 377 P.2d 520, 523 (N.M.1962).   However, "such [expert] testimony is not always necessary" to establish medical causation.   Folz, 797 P.2d at 260. This is especially the case "where exceptional circumstances within common experience or knowledge

of the layman are present." <u>Cervantes v. Forbis,</u> 389 P.2d 210, 213 (N.M.1964).   In determining whether an expert is required, or whether "exceptional circumstances" exist, New Mexico courts utilize a reasonableness standard; that is, a plaintiff is required to produce an expert "when the trial court reasonably decides that it is necessary to properly inform the jurors on the issues." <u>Folz,</u> 797 P.2d at 260 (citing <u>Gerety v. Demers,</u> 589 P.2d 180, 195 (N.M .1978)).   In cases where expert testimony is necessary, summary judgment may be appropriate where a plaintiff has not or cannot produce an expert report to back his or her position.   <u>See Lopez v. Reddy</u>, 2005-NMCA-054, 137 N.M. 554, 557, 113 P.3d 377, 380 (holding that where expert testimony was necessary, "the exclusion of [] Plaintiffs' only medical expert, precludes Plaintiffs' cause of action."); <u>see also</u> <u>Forbis,</u> 73 N.M. at 449, 389 P.2d at 213 (upholding summary judgment in the absence of expert testimony as to how a defendant surgeon's conduct fell below the standard of care because there could be no genuine issue of material fact), <u>modified on other grounds by</u> <u>Pharmaseal Labs., Inc. v. Goffe,</u> 90 N.M. 753, 757, 568 P.2d 589, 593 (1977).

Here, Plaintiff does not assert that this is the type of case that a lay person could understand without expert testimony.  Moreover, the Court finds that it is reasonably necessary to have an expert inform the fact finder on the issues of the standard of care and alleged breach of that standard.  An ordinary juror would not know whether certain medications and dosages were appropriate.  Further, the average juror would not be able to determine whether Ms. Cummings was correctly diagnosed and properly evaluated for risks including falling. Accordingly, the Court finds that expert testimony is required to support Plaintiff's medical negligence claim, and Plaintiff's failure to produce an expert report by the deadline is fatal to Plaintiff's medical negligence claim.  Therefore, Plaintiff's medical negligence claim against MountainView is dismissed.

**II.     MountainView is Entitled to Summary Judgment on Plaintiff's Breach of Warranty Claims**

MountainView argues that both Plaintiff's implied warranty and express warranty claims fail as a matter of law.   Plaintiff's response on this issue contains a puzzling statement, "Defendant's argument is purely legal and therefore improper for summary judgment. Assuming Defendants have stated more than a legal argument, Plaintiff states as follows." **(Doc. No. 124)**, p. 8.  The Court is at a complete and total loss to understand how Plaintiff can assert that a legal argument which involves no factual disputes is inappropriate for a summary judgment motion. The sole function of a motion for summary judgment is to resolve purely legal issues.  See Fed. R. Civ. P. 56(c)(Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); Carey v. U.S. Postal Serv., 812 F.2d 621, 623 (10th Cir. 1987) ("summary judgment decisions involve purely legal determinations").   Contrary to Plaintiff's assertion, a legal argument involving no factual disputes is precisely the type of matter that may properly be resolved on a motion for summary judgment.

A.     *Implied Warranty*

"Generally, when entering into a professional services contract a physician impliedly warrants only that he possesses and will employ that degree of skill, care, and learning possessed and exercised by others in the profession. An express warranty of particular result would be required in order to find that more than the above was warranted."  Toppino v. Herhahn, 1983-NMCA-060, 100 N.M. 585, 588, 673 P.2d 1318, 1321 aff'd in part, rev'd in part, 1983-NMSC-079, 100 N.M. 564, 673 P.2d 1297.  Plaintiff does not dispute this is the applicable standard for an implied warranty claim, but instead simply asserts that MountainView breached its duty to

maintain the general standard of care. Plaintiff ignores the fact that she would again need expert testimony regarding whether MountainView breached the applicable standard of care to support this claim.  Therefore, Plaintiff's implied warranty claim fails for the same reason as her medical negligence claim, lack of a medical expert report.

       B.    *Express Warranty*

Additionally, Plaintiff failed to show an express warranty in this instance.   Plaintiff claims that a contract existed between the parties which expressly warrantied that the services being rendered were per Ms. Cumming's physicians' orders and those deemed necessary for the interest and care of Ms. Cumming.  Plaintiff attached a "Conditions of Treatment" form signed by Ms. Cummings as an exhibit to her Response in support of this claim.  However, Plaintiff did not highlight any text in the document or to otherwise point the Court towards specific statements that Plaintiff contends established an express warranty.  See D.N.M. LR-Civ 10.6 (noting that "the portions of an exhibit the party wishes to bring to the Court's attention must be marked, e.g., by brackets, shading, or underlining").   Further, upon detailed review of the document, the Court was unable to find any express warranties to the effect that Plaintiff claims. Plaintiff also claims that certain physicians made express warranties to Ms. Cummings during the course of her treatment, but she does not provide any admissible evidence in support of this allegation.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" (citation omitted). Accordingly, Plaintiff has failed to set forth sufficient evidence to survive MountainView's motion for summary judgment on her express warranty claim.

**III.   MountainView is Entitled to Summary Judgment on Plaintiff's Negligent Credentialing/Negligent Hiring Claim**

11

Plaintiff contends that MountainView breached its duty to credential only competent physicians. See **(Doc. No. 1-10)**, p. 6.   Similar to Plaintiff's medical negligence claim, New Mexico law appears to require expert testimony to support a negligent training or credentialing claim in a medical context. See Grassie v. Roswell Hosp. Corp., 2011-NMCA-024, ¶80, 150 N.M. 283, 258 P.3d 1075, 1094 ("We conclude that expert testimony was necessary to explain the credentialing process to jurors and establish the standard of care to be applied.").[4]   Dr. Schneider's report does not contain any opinions on credentialing or hiring.  Because Plaintiff cannot identify an expert opinion on this issue, this claim must also be dismissed.  Grassie v. Roswell Hosp. Corp., 2011-NMCA-024,¶81,  150 N.M. 283, 258 P.3d 1075, 1094 ("Because Plaintiff did not present expert testimony to establish the standard of care under the circumstances of this case, we reverse the compensatory damages award based on the claim of negligent hiring.").

---

[4]  In Grassie, the New Mexico Court of Appeals cited a number of cases from other jurisidctions reaching the same conclusion:

> "[a]ll courts that have looked at the question have concluded that expert testimony is necessary to establish the standard of care owed by a hospital, or whether the hospital has been negligent." Benjamin J. Vernia, Annotation, *Tort Claim for Negligent Credentialing of Physician,* 98 A.L.R.5th 533, 553 (2002). Our own canvass of the law confirms the assertion. Without attempting to be encyclopedic, the following cases are a representative sample. Welsh v. Bulger, 548 Pa. 504, 698 A.2d 581, 585 (1997) (holding that, "unless a hospital's negligence is obvious, a plaintiff must produce expert testimony to establish that the hospital deviated from an accepted standard of care and that the deviation was a substantial factor in causing the harm to the plaintiff"); Johnson v. Misericordia Cmty. Hosp., 99 Wis.2d 708, 301 N.W.2d 156, 172 (1981) (holding that "since the procedures ordinarily employed by hospitals in evaluating applications for staff privileges are not within the realm of the ordinary experience of mankind, we agree ... that expert testimony was required to prove the same"); Frigo v. Silver Cross Hosp. & Med. Ctr., 377 Ill.App.3d 43, 315 Ill.Dec. 385, 876 N.E.2d 697, 724 (2007) (holding that expert testimony is required to prove the applicable standard of care concerning granting staff privileges and whether the standard was violated); Neff v. Johnson Mem. Hosp., 93 Conn.App. 534, 889 A.2d 921, 928 (2006) (holding that the "parameters of a hospital's judgment in credentialing its medical staff is not within the grasp of ordinary jurors. To the contrary, a hospital's decision whether to grant staff privileges to a physician is a specialized activity, executed by senior members of the hospital's staff, such as the chief executive officer and the department chief"); Mills v. Angel, 995 S.W.2d 262, 275 (Tex.App.1999) (holding that "[e]xpert testimony *is required* to establish liability in the area of credentialing, because the procedures ordinarily used by a hospital in evaluating applications for staff privileges are not within the realm of the ordinary experience of jurors").

Grassie, at ¶80

12

**IV.     Plaintiff Cannot Recover Punitive Damages Against MountainView**

In a negligence action, punitive damages cannot be awarded without recovery of compensatory damages.  <u>See</u> NMRA, UJI 13-1827.  Here, Plaintiff has no underlying claim against MountainView.  Therefore, she could not possibly recover punitive damages against MountainView.

## Conclusion

MountainView is entitled to summary judgment on Plaintiff's claims against it.  Plaintiff failed to provide an expert report demonstrating MountainView's negligence within the time allotted by this Court for doing so. Plaintiff's failure to disclose an expert report in support of her allegations is fatal to her medical negligence and negligent hiring/credentialing claims.  Further, Plaintiff's warranty claims are not viable. Plaintiff's implied warranty claim requires an expert report, and she failed to provide evidence of any statements to form the basis of an express warranty claim.  Finally, because Plaintiff has no underlying claims against MountainView, there is no basis for awarding punitive damages against MountainView.

**THEREFORE, IT IS ORDERED**, that Defendant MountainView's Motion for Summary Judgment **(Doc. No. 120)** is **GRANTED**.  Plaintiff's medical negligence, express and implied warranty, negligent hiring/credentialing, and punitive damage claims against Defendant MountainView are hereby dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE